411 P.2d 47

**ARIZONA STATE RETIREMENT BOARD,**
State of Arizona, Appellant,

v.

**Helen GIBSON, Appellee.**[*]

**No. I CA–CIV 67.**

Court of Appeals of Arizona.

Feb. 7, 1966.

Rehearing Denied March 14, 1966.

---

[*] This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 8010. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

Darrell F. Smith, Atty. Gen., Robert W. Pickrell, former Atty. Gen., by John A. Murphy, Jr., Sp. Asst. Atty. Gen., for appellant.

Scoville & Hofmann, by Leroy W. Hofmann, Phoenix, for appellee.

STEVENS, Chief Judge.

This case relates to the right of the Arizona State Retirement System Board, hereinafter called the Board, to offset against the pension of the widow of a deceased former member of the Arizona Highway Patrol certain disability retirement payments which it is claimed the member illegally received during his lifetime. All references herein are to the Arizona Revised Statutes unless expressly otherwise stated.

Title 38 of the Arizona Revised Statutes bears the caption "Public Officers and Employees". Chapter 5 thereof bears the caption "Social Security and Retirement" and Article 2 of said chapter bears the caption "State Employees Retirement System". Prior to the year 1959, Article 2 was composed of Sections 38–741 to 38–764, both inclusive. Section 38–743, subsec. A recognizes the Board as an autonomous body with an official seal, with a capacity to transact business in its official name and among other things "in that name may sue and be sued." The Board is authorized to employ individuals and designate certain duties and responsibilities to the employees. One such employee is the Director. The 1959 session laws contain chapter 145 which chapter was approved by the Governor and filed with the Secretary of State on 2 April 1959 although the chapter by its own terms did not cover benefits until 1 July 1959. Section 2 of chapter 145 contains the following introductory recitation:

"Title 38, chapter 5, article 2, Arizona Revised Statutes, is amended by adding sections 38–765 to 38–776 * * *"

The 1960 session laws reflect chapter 42 which chapter was approved by the Governor and filed with the Secretary of State on 22 March 1960, and which became law on 25 June next following. One of the sections which was amended by chapter 42 is section 38–773 which said section was added to the statute law of the State of Arizona with the enactment of chapter 145.

The legislative purpose in adopting chapter 145 is a humanitarian purpose and is well expressed in section 1 of the chapter as follows:

"PURPOSE

It is generally recognized that the official duties of the members of the Arizona highway patrol are of such nature that they require men possessed of considerable physical strength and endurance. Because of the nature of the employment, highway patrol members are frequently compelled to withdraw from the patrol prior to reaching the age for retirement under the state employees' retirement system. Under these circumstances patrol members and their families are not afforded the same protection as other public employees who are in a position to continue their work until becoming eligible for retirement and it is the purpose of this act to make provisions therefor."

The case which we have for consideration is a case of comparatively simple facts and yet it is difficult to set this matter forth in a short opinion. George C. Gibson was born in 1893. In 1949 he married the plaintiff herein and they remained husband and wife throughout the balance of his natural lifetime, he having died on the 19th day of May 1960. The record reflects extremely poor health in the latter months of his life and that the plaintiff remained at his side. In 1942, Gibson commenced his employment with the Arizona Highway Patrol and pursuant to a later application, he was blanketed in under the Arizona State Employees Retirement System with credit for his service beginning with the year 1942. During the early part of the year 1959, Mr. Gibson became ill and was placed on sick leave. After chap-

ter 145 became effective and on the 3rd day of July of that same year, he filed a petition for disability retirement. The appropriate administrative procedures were completed and he was placed on disability retirement with a pension of $241.09 a month beginning July 1959.

Section 38–773, as the same appears in chapter 145, reads as follows:

"APPLICABILITY OF WORKMEN'S COMPENSATION LAW AND FEDERAL OLD AGE AND SURVIVORS_ INSURANCE SYSTEM

This article shall be supplemental and in addition to the benefits payable under the state workmen's compensation law or the federal old age and survivors insurance system, but members and their beneficiaries receiving compensation under those provisions of law shall not receive the benefits provided by this aritcle during the period they receive such compensation."

As heretofore stated, this section was amended in the year 1960 by the adoption of chapter 42, the 1959 language being retained and the section being enlarged by adding the following:

"* * * except in the event the employee's primary benefit under those provisions of law is less than the benefits provided by this article, then the state highway patrol retirement system shall pay the deficiency as determined by the state retirement system board."

In Gibson's application for disability retirement he answered a form questionnaire and gave the following answers to the following questions:

"Have you submitted an application for benefits under the Federal Old Age and Survivors Insurance System.

*No*

"Are you now drawing such compensation? *No*"

This document was "acknowledged" before a notary public. Thereafter eleven (11) warrants were drawn on the State Treasurer each being payable to George C. Gibson, each being the sum of $241.09. On all except two there is a typed restrictive endorsement reading in substance,

"I, the undersigned payee, affirm that I am not now drawing a Federal Old Age and Survivors' Insurance System benefit and that I do not have an application now pending."

The warrant for the month of May 1960, being the month of the death of Mr. Gibson, has the above restriction and was endorsed by Mrs. Gibson in her capacity as executrix. The warrants for the months of December 1959, and February 1960, carry the restriction and what appear to be the signatures of both Mr. and Mrs. Gibson. From her testimony it is probably safe to assume that his name was signed by her.

Upon Mr. Gibson's death, the plaintiff, his widow, applied for her statutory widow's pension. The Board made an informal investigation and concluded that Mr. Gibson had been drawing Social Security on and before the 3 July 1959, application for the disability retirement pension and throughout the period of the receipt of his disability retirement pension. The Board determined that Mr. and Mrs. Gibson had illegally received $2,651.99 and declined to make any payments to the plaintiff until the monthly increment of her pension should equal that sum. Section 38–743, subsec. C states in part that:

"The board * * * may hold hearings for the purpose of determining any question involving any right, benefit or obligation of an employee under this article * * *."

Pursuant to this section, the plaintiff made application to the Board for a hearing in relation to her pension rights. A then member of the Board, who is also a member of the Bar, was designated to conduct the hearing; he will be referred to herein as the Hearing Officer. There was some de-

lay in arriving at a date which was mutually agreeable to the Hearing Officer and to plaintiff's counsel as it is not always easy to coordinate the time of busy lawyers. Pending the hearing, the plaintiff qualified as executrix in the matter of the probate of her husband's estate, and the Board filed creditor's claim against the estate of Mr. Gibson. The claim was supported by a letter which stated that the Retirement System did not know until June 1960 that Social Security Benefits were being paid to Mr. and Mrs. Gibson. The letter stated in part:

"The Certificate of Social Security Insurance Award now available to us notes such income payments began in July of 1958, were subsequently increased in January of 1959, and were paid and received during the months of July 1959 through May 1960."

(Nowhere in the file which was certified to the Superior Court is there any document which supports this statement.) The letter stated that improper payments totaling $2,651.99 were paid and set forth certain deductions which had been made by the fund arriving at the figure set forth in the claim.

The claim was rejected and a letter of advice to that effect was sent to the Board. No suit was filed in relation to the rejected claim within the three months following the rejection of the claim as required by Section 14–579 and the rejection of the claim became final insofar as the estate of Mr. Gibson was concerned.

■ The hearing was held on the 8th day of September 1961, and at that time is the first indication of any friction or feeling of animosity in relation to the plaintiff's claim. Whether this was shared by all members of the Board we do not know but it appears to have been shared by the Hearing Officer and later by the attorney for the Board. At the inception of the hearing and in relation to the fact that plaintiff had been granted a hearing by the Board, the Hearing Officer stated that:

"She has been granted this right as a matter of grace by the Board."

This Court does not so interpret Section 38–743, subsec. C above quoted.

■ During the hearing plaintiff's counsel suggested that certain matters might be the subject of stipulation. The Special Assistant Attorney General who was present at the hearing representing the Board, did not participate in these discussions, the discussions being between the Hearing Officer and the attorney for the plaintiff. The Hearing Officer advised that he was not in a position to bind the Board. This Court does not impute any bad motive, but observes that it would be much better in the conduct of administrative hearings, if the Hearing Officer was divorced from the agency in question and could approach these matters as a fair and impartial trier of the facts rather than as an advocate for the Board, and matters of stipulation could be resolved between attorneys as such matters are resolved in trials. The questions and answers were conducted entirely by plaintiff's counsel and the Hearing Officer. Mrs. Gibson testified that she and Mr. Gibson were married in Las Vegas in 1949 and that Mr. Gibson died 19 May 1960. She further testified that at all times from the date of their marriage to the date of his death, they were husband and wife and that since Mr. Gibson's death she had received no widow's benefits. She stated that during the last 11 months of Mr. Gibson's life he was incapacitated and that he received disability benefits from the State Retirement System. She gave an affirmative answer to the question,

"Now, at the same time that he was receiving disability benefits from the Highway Patrol and Arizona State Retirement System, he also applied for and obtained benefits from the OASI, or commonly known as Social Security?"

Mrs. Gibson acknowledged that the warrants of December 1959, and February 1960, bore her signature. She stated that "Mr.

Gibson thought he was entitled to both". She acknowledged that she had "endorsed many of these checks", the proceeds therefrom having been used by herself and her husband. She further acknowledged that during the last few months of his illness he was not in physical condition to sign his own name and that she in fact endorsed his name. She acknowledged that a particular signature was hers but the particular warrant was not identified. She was asked to look at the reverse side of a warrant and stated that the signatures thereon were Mr. Gibson's and her own, the particular warrant was not identified. When asked with reference to the typewritten material above Mr. Gibson's signature and her own signature, she replied, "I didn't pay much attention to it to tell you the truth". Mrs. Gibson acknowledged that she was the sole beneficiary of Mr. Gibson's estate. She acknowledged that a claim had been made against Mr. Gibson's estate by the Retirement System. The record is silent as to whether or not there was in fact any estate left by Mr. Gibson. When Mrs. Gibson was asked why Mr. Gibson was entitled to both retirement and social security she responded "He figures he paid in for his retirement and also for Social Security".

 Mrs. Gibson's attorney stated, "May I look at your file in the matter?" to which the Hearing Officer replied, "This is my personal file". The Hearing Officer stated:

"the file for process (sic) of this hearing is a conglomeration of official records and office memoranda, and I don't think it would be proper to open the entire file, because there are confidential memoranda in it. The file will be placed in its regular public relationship and you will be welcome to go through the regular file".

The Chairman suggested that it would take an hour or two to remove the private memoranda. We hold that the file was available for inspection at the hearing.

The personal differences between the Hearing Officer and the plaintiff's counsel carried over into the matters before the Superior Court and this Court observes that it would be much better for the litigants and for counsel, much easier and much more pleasant for the courts, if matters proceed without personalities even though each side may have strong personal feelings with reference to the litigation.

The Hearing Officer made his report to the Board and on the 16th day of December 1961, the Board entered an administrative decision which contains the following language:

"* * * that the action of the Board taken on July 15, 1960 with regard to the claim of Mrs. Gibson be reaffirmed to wit: 'That the surviving spouse is not entitled to receive an annuity income from this System until the total indebtedness to the Highway Patrol Retirement Fund resulting from improper payments has been met in full, collection of the amount due this System being accomplished by withholding otherwise committed benefit payments until the total of such payments is equal to $2,651.99.'"

The fact of this decision is alleged in the complaint and admitted in the answer but it is not reflected in the records which were forwarded by the Board to the Superior Court. The Court has heretofore observed in relation to the letter in support of the creditor's claim that there were recitations relative to receipt of Social Security benefits which recitations do not find an exhibit or other documentation in the file which was certified to the Superior Court.

 Title 38 of A.R.S. does not provide for a judicial review of the administrative decision here in question. Judicial review is authorized by Sections 12–901 to 12–914 inclusive. The plaintiff took the necessary steps for a judicial review. The matter was ultimately determined by the Superior Court without additional evidence either

oral or written and without additional affidavits, this determination having been made by the court on a motion for summary judgment based upon the record which the Board certified to the Superior Court including a copy of the transcript of the hearing. This Court has before it the identical record which was considered by the Superior Court and while giving weight to the decision of the Superior Court, this Court is free to reach its own conclusion.

Section 12–907 provides that within twenty days after service, the agency and all other defendants "shall answer the complaint". The matter of parties is covered by Section 12–908 includes those "who are parties of record in the proceedings", these persons being made defendants in the Superior Court.

Section 12–909 outlines the complaint, the answer and their requirements. Section 12–910, subsec. A states that these matters "shall be heard and determined with convenient speed." No new or additional evidence is to be presented except in the event of a trial de novo or "where in the discretion of the court justice demands the admission of such evidence." Subsection B of this section authorizes a trial de novo when demanded, if there was no stenographically reported hearing before the agency. Section 12–911 relates to the powers of the court which powers include (Subsection A, par. 5) the power to "[m]odify, affirm or reverse the decision in whole or in part." An appellate review is allowed by Section 12–913 and both attorneys at the oral argument conceded that with the creation of the Court of Appeals, the Court of Appeals has the appellate review jurisdiction.

Section 12–914 authorizes the application of the Rules of Civil Procedure.

■ The Hearing Officer was joined with the Board as a party defendant in the complaint in review. He made a separate motion to dismiss and there was no formal order ruling thereon. However, the judgment relates only to the Board so that in

effect, the motion was granted. Since the Board had the statutory capacity to be sued as an entity, the motion to dismiss filed by the Hearing Officer should have been granted. Under the circumstances of this case, he was not a "party of record" in the administrative hearing. These matters are pointed out only in the interest of procedural problems and the status of the record is such that no corrective action need be taken by the trial court.

Section 12–907 requires the filing of an answer, Section 12–909, subsec. B specifies the matters which are to be forwarded by the administrative agency to the Superior Court and Section 12–914 authorizes the application of the Rules of Civil Procedure which rules encompass preliminary motions, the determination of which are often antecedent to the filing of the formal answer. The answer in this case was not required to be filed within the 20 days specified in Section 12–907 when motions were filed addressed to the plaintiff's complaint. The attorney for the administrative agency, however, should temper his procedural approach by bearing in mind the statutory admonition contained in Section 12–910, subsec. A that these matters be "determined with convenient speed".

■ The plaintiff requested a trial de novo and the Board sought to have this allegation stricken urging that since there was a Reporter's Transcript of the testimony, there could be no such request. The complaint does not reflect the fact of a hearing with a Reporter's Transcript of the testimony and even if such had been reflected, the trial judge had the discretion to permit the introduction of evidence. It is our opinion that the request was not the subject of a motion to strike and that the proper procedure would be to wait until the answer had been filed and an effort made to set the case for trial and at that stage, the trial judge would have before him those facts necessary to permit the exercise of that discretion granted by Section 12–910, subsec. A.

■ The record reflects extensive procedural delays and these statements are not intended as being critical of the trial court. A discussion of this phase of the case would add nothing to the law of this case or the law relative to procedure. The complaint for review was filed on 19 June 1962, and on 13 November 1962, the Court ordered that the answer be filed and the record certified. The answer was filed on 23 November accompanied by a memorandum. The memorandum sharply criticized the plaintiff for rejecting the creditor's claim and accused Mr. Gibson and the plaintiff of several different felonies as well as other matters of bad faith in relation to the procuring and the receipt of the pension payments. These charges were not appropriate pleadings. The evidence before the Hearing Officer and the documents certified to the Superior Court, do not reflect that type of conduct and this is especially true in the light of Chapter 145 which by its express terms became a part of article 2, for in article 2 we find Section 38–763 which states:

"A person who knowingly makes any false statement or who falsifies or permits to be falsified any record of the state retirement system in an attempt to defraud the system, is guilty of a misdemeanor."

There is no proof in the record that the questions and answers made by Gibson in the 3 July 1959, application were not true. We seriously question that any jury would find that either Mr. or Mrs. Gibson cashed any of the retirement warrants "in an attempt to defraud the system" even though only a misdemeanor. There is no act on the part of either Mr. or Mrs. Gibson which could be classified as the type of act which the Supreme Court condemned in the case of Sines v. Holden, 89 Ariz. 207, 360 P.2d 218 (1961).

■ We next consider the question of the effect of the receipt of both retirement and Social Security payments. The plaintiff's testimony that they saw no in-consistency of receiving both is quite understandable. The Legislature soon saw the harshness of Section 38–773 as originally enacted and this section was amended during the lifetime of Mr. Gibson although it did not become effective until after his death. Certainly there is nothing sinister in plaintiff's having refused the creditor's claim. An examination of the record indicates that there are many legal and factual questions. The Board did not follow by suit against the estate and cannot now claim a right to recover by offset or otherwise in connection with the nine warrants which do not carry the plaintiff's signature. While there might be some implication in the testimony that the plaintiff signed the name of her husband without adding her own signature, the transcript does not so establish.

■ It is our opinion that the two warrants which bear her signature do not establish that her signature was affixed "in an attempt to defraud the system." The evidence does not disclose the deficiency which would be paid by the State Retirement System Board after first deducting Social Security, a finding which is essential under Section 38–773 as amended. In the face of the record we hold that with the amendment of the act, this deduction is the only penalty which could have been imposed upon the Gibsons. The Board cannot claim to have acted upon matters which were not certified to the courts in the exercise of judicial review. Mrs. Gibson as the surviving widow of a highway patrol employee with sufficient service, thereby acquired a statutory right to a widow's pension. Once she established the factual background which brought the statute into play, and there is no issue in this regard in this case, then the burden of going ahead with the evidence to establish a total or partial lack of entitlement rested with the Retirement Board. We have carefully examined the record. We find as a matter of law an absence of proof which is suf-

ficient to defeat Mrs. Gibson's statutory entitlement except in the limited matter herein set forth. Under these circumstances, this is a case which can be determined by a motion for summary judgment. Summary judgment is in harmony with Section 12-910, supra.

The judgment recites in part:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the administrative decision of the Arizona State Retirement Board entered in said proceedings on or about December 16, 1961, denying to the Plaintiff widow's benefits pursuant to the Arizona Highway Patrol Retirement Law, and any and all other administrative decisions of said Arizona State Retirement Board denying to the Plaintiff said widow's benefits, be and the same are hereby reversed.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff recover from the Defendant the sum of $2,651.99, together with interest from May 19, 1960, and her costs in this action."

This is a "judgment other than for money or costs" and the judgment should not have been "settled, approved and signed until after the expiration of five days after the proposed form thereof has been served upon opposing counsel * * *" where as here, there was no approval as to form. Rule 58(d), Rules of Civil Procedure, 16 A.R.S. This error can be cured on appeal since the portion thereof which is the subject of proper objection is that portion relating to interest.

The last above quoted paragraph of the judgment is deleted and in lieu thereof, the following is substituted:

"IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the plaintiff recover from the defendant her monthly installments of widow's pension beginning with the month of June 1960 subject, however, to the deductions for Social Security which she received as provided by Section 38-773 as amended, such payments bearing interest at the rate of 6% per annum from the due date until paid."

The judgment is affirmed as modified and this cause is remanded with continuing jurisdiction in the Superior Court to make such orders as may be appropriate in relation to the implementation of the substituted paragraph and with authority to enlarge or modify the substituted paragraph should such enlargement or modification be necessary to carry out the intent and purpose of this opinion.

DONOFRIO, J., concurring:

JOHN A. McGUIRE, Superior Court Judge (dissenting):

I am unable to concur in the disposition of this case by summary judgment and believe it should be remanded for trial de novo on the merits.

The failure of appellant to follow up the rejection of the claim against Mr. Gibson's estate by filing suit, is a final bar to any claim against the estate, against Mrs. Gibson as executrix and against her as an heir or devisee. The sole question remains then whether she can be personally held liable to appellant. She cannot be held personally liable merely because an overpayment or even wrongful payment was made to her husband and the use of the money by the community.

She can be held liable only if she actively participated in the receipt of this money under circumstances charging her with notice that the payment was improper. At the administrative hearing the question was asked by the chairman:

"Let me ask the question again. Do you know or did you know that at the time Mr. Gibson was given State Disability payments under the State Retirement System, that the two vouchers contained a statement on the reverse side thereof that 'I, the undersigned payee, affirm that I am not now drawing a Federal Old Age and Survivor's

Insurance System benefit and that I do not have an application now pending' ?"

"A. No, he thought he was entitled to both. I did not know it"

However, the administrative tribunal was not obliged to accept the uncorroborated testimony of appellee nor follow the theory that failure to read the notice on the back of the voucher was necessarily excusable.

In the case of General Factors, Inc. v. Beck, Ariz., 409 P.2d 40 (1965), the Supreme Court held:

"The phrase 'actual notice' is properly distinguishable from 'actual knowledge' and includes notice to an authorized agent as well as generally the communication of any information enabling the recipient to acquire therefrom, by the exercise of reasonable diligence, actual knowledge. United States v. Certain Parcels of Land, etc., 85 F.Supp. 986 (S.D.Cal.1949)."

In my opinion this case should be treated as though the state had brought suit against appellee for the amount in question. There is no showing in the record how many of the vouchers were endorsed by appellee with her husband's name. There is not enough in my opinion in this record to justify summary judgment for either party. If any judgment requiring any deduction from the pension due appellee is to be rendered (as to which I express no opinion) there is not enough evidence in the present record to determine the amount.

It is true that under the provisions of A.R.S. 12–910, trial de novo is not grantable as a matter of right where the hearing has been transcribed. But under the unusual circumstances of this case, I believe it proper for the protection of the rights of both parties.

Note: Judge James Duke Cameron having requested that he be relieved from the consideration of this matter, Superior Court Judge John A. McGuire was called to sit in his stead and participate in the determination of this decision.