975 P.2d 130

**Ronald D. JOHNSON, Plaintiff–Appellant, Cross Appellee,**

**v.**

**Rose MOFFORD and the State of Arizona, Defendants–Appellees, Cross Appellants.**

**No. 1 CA–CV 97–0304.**

Court of Appeals of Arizona, Division 1, Department C.

Aug. 27, 1998.

Review Denied April 12, 1999.

Gonzalez & Smith, P.C. by Alex D. Gonzalez, Mesa, for Plaintiff–Appellant, Cross Appellee.

Mangum, Wall, Stoops & Warden, P.L.L.C. by Rebecca S. Currey, Flagstaff, for Defendants–Appellees, Cross Appellants.

## OPINION

LANKFORD, Judge.

¶1 This appeal raises the infrequent but important issue of the limits on a governor's power to remove state executive appointees from office. Appellant Ronald D. Johnson filed an action for damages against the State of Arizona and its then governor, Rose Mofford, alleging that Governor Mofford had wrongfully removed him from his position as a member of the Board of Pardons and Paroles ("the Board") in violation of various rights due him. After a bench trial, the superior court determined that the governor had cause to remove him. Johnson's appeal to this Court contends that the superior court erred both in determining that the governor had cause to remove him and in denying his request for a jury trial.

¶2 As authorized by Arizona Revised Statutes Annotated ("A.R.S.") section 31–401(A),[1] Governor Bruce Babbitt appointed Johnson to the Board in 1984, and Governor Evan Mecham reappointed him for a five-year term in 1987. The Board has exclusive power to pass upon and recommend reprieves, commutations, paroles and pardons. A.R.S. § 31–402. As provided in A.R.S. section 31–401(B), the members are to serve "on a full-time basis." They can be removed by the governor only for cause. A.R.S. § 31–401(D).[2]

¶3 Rose Mofford became Arizona's governor in 1988. On May 1, 1989, Governor Mofford sent a confidential letter to Johnson asking him to respond in writing as to why he should not be removed from his position as a board member for three reasons detailed in the letter. Johnson's attorney responded immediately by letter, but his response failed to convince the governor that cause did not exist to remove him. By subsequent letter dated May 5, 1989, the governor advised Johnson that he was being removed from the Board effective that day.

---

1. By amendment to A.R.S. section 31–401(A) in 1993, the Board was renamed the Board of Executive Clemency. *See* Laws 1993, Ch. 255, § 64.

2. The subsection authorizing removal of board members for cause subsequently was redesignated as subsection (E). *See* Laws 1990, Ch. 127, § 31.

She also advised him, though, that he could request a post-termination hearing if he wanted one.

¶ 4 Johnson declined Governor Mofford's offer of a post-termination hearing. He instead filed this action in Maricopa County Superior Court for wrongful discharge and violation of constitutional rights, and requested damages of at least $2,250,000.00.

¶ 5 When the matter was first considered by the superior court, the state defendants persuaded the superior court that the governor's action in removing Johnson was subject to the Administrative Review Act (the "A.R.A."), A.R.S. sections 12–901 to 12–914, and that Johnson consequently needed to exhaust his administrative remedies. The superior court stayed the proceedings and ordered a post-termination hearing. A hearing officer conducted a hearing and recommended that the governor affirm Johnson's removal from the Board. The governor adopted this recommendation and affirmed Johnson's removal.

¶ 6 The superior court then lifted the stay and Johnson attempted to proceed with his tort action. The state defendants argued that the A.R.A. limited the relief he could request to a review of the administrative decision. The superior court agreed, treating Johnson's case not as a tort action but as an appeal from an administrative decision. The court limited its review to whether, on the administrative record, the governor's action was arbitrary, illegal, capricious, or an abuse of discretion. The superior court affirmed the governor's decision to remove Johnson.

¶ 7 Johnson appealed the superior court's decision. In *Johnson v. Mofford*, 181 Ariz. 301, 890 P.2d 76 (App.1995), we determined that the A.R.A. did not govern. We noted that although A.R.S. section 41–785 provides the sole statutory authority for review of state agency decisions affecting state employees, Johnson was an executive appointee excluded from that act and therefore also excluded from the A.R.A. We held that the

superior court had erroneously reviewed the termination decision under the standard of review for agency action. "Instead, the court should have independently determined Johnson's discharge claim and determined whether the Governor had sufficient legal cause under A.R.S. § 31–401(D) to remove Johnson from his position." *Id.* at 305, 890 P.2d at 80. However, we did not specify the source of the superior court's authority or further explain the nature of its review.

¶ 8 The superior court on remand conducted a two-day bench trial in which evidence was presented on all three of the matters Governor Mofford had listed as cause for removing Johnson. The superior court concluded that the governor had had cause to remove him, but only as to one reason: a "walk-out" by Johnson and two other board members who were scheduled to hold hearings at the state prison.[3] The superior court found in favor of the state defendants and dismissed the complaint, stating as follows:

> [S]ufficient cause existed for Mr. Johnson's termination from employment as a member of the Arizona Board of Pardons and Paroles. He was a member of a hearing panel that was scheduled to conduct hearings at the State Prison in Florence, Arizona during March, 1989. Mr. Johnson and other members of the Board terminated those hearings prematurely and left inmates, inmates' families and friends and the prison staff "in the lurch." Mr. Johnson made no attempt to work out the difficulty with Department of Corrections officials nor to dissuade the less experienced panel chairman from his decision to walk out of the hearings. Having not fulfilled his duties as a board member on that date and walking out of the hearings, he caused delay, cost, and inconvenience. Mr. Johnson's acts of walking out of the hearings, failing to contact Department of Corrections officials to attempt to resolve the problem, and failing to attempt to dissuade the panel chairman of his decision to walk

---

**3.** The other two grounds identified by the governor related to a leave policy used by the Board and Johnson's actions concerning a reaccrediting of some of his leave hours and the state's "buy-

down" of leave hours. The superior court held that there was insufficient evidence that these matters provided cause to remove Johnson.

out, represent a failure to fulfill his job duties as a member of the Arizona Board of Pardons and Paroles and represent sufficient cause for his termination from employment.

¶ 9 In this appeal—the second to this Court—Johnson challenges the sufficiency of the evidence supporting the superior court's finding that cause for termination existed. He also asks that we remand yet again, this time for a trial to a jury, arguing that the superior court erred in refusing his request for jury trial.

■ ¶ 10 We first consider Johnson's contention that the superior court mistakenly found that the "walk-out" constituted cause for Governor Mofford to remove him from the Board. The applicable statute states that a member of the board may be removed by the governor only for "cause," but does not define "cause." A.R.S. § 31–401. We begin, therefore, by deciding what this term means. As a question of statutory interpretation, this issue is determined *de novo* by the reviewing court. *Hampton v. Glendale Union High School Dist.,* 172 Ariz. 431, 433, 837 P.2d 1166, 1168 (App.1992).

¶ 11 Both parties cite to *Farish v. Young,* 18 Ariz. 298, 158 P. 845 (1916) as providing a definition of "cause" in the context of removal of an appointed official. In that case, the official had been removed pursuant to the Phoenix City Charter. At the time of the removal, the charter provided: "The city manager shall be appointed by the commission, and shall hold his office until removed for cause by the commission." Our supreme court defined the term in that case:

> The phrase "for cause" does not mean the arbitrary will of the appointing power, for that might be the outgrowth of mere whim, caprice, prejudice or passion, which would, in reality, be no cause at all. But the phrase "for cause" must mean some cause affecting or concerning the ability or fitness of the incumbent to perform the duty imposed upon him. "The cause must be one affecting the officer's capacity or fitness for the office." 21 Am.Jur. & Eng. Ency. of Law 2d ed 850. Hence it must be inefficiency, incompetency or other kindred disqualification....

*Id.* at 302, 158 P. at 847 (quoting *Board v. Williams,* 96 Md. 232, 53 A. 923 (Md.1903)).

■ ¶ 12 This definition of "cause" is equally appropriate here. The legislature has limited the governor's power of removal to instances in which there is cause to do so. In accord with *Farish,* "cause" implies some inability, incapacity or unfitness.

¶ 13 Our review also requires that we consider how much deference be given to the governor's decision. Although our prior opinion stated that the superior court should "independently determine[ ]" the discharge claim, this reference was to review independent of the A.R.A.: Any suggestion that the courts independently decide whether the official should be discharged is incorrect. In *Farish,* our supreme court indicated that the courts must defer to some extent to the decision to terminate: "Where the word 'cause' is not defined by law, it is left in the first instance to the [person with the removal power] to determine what is sufficient cause to justify the removal...." *Farish,* 18 Ariz. at 303, 158 P. at 847. The courts merely exercise their power of review to determine that the power has been "honestly, fairly and reasonably exercised and not through caprice or prejudice." *Id.* Judicial review of the action is "not for the purpose of weighing [the evidence] ... but merely to ascertain whether there was any evidence at all to sustain the decision of the inferior tribunal...." *Id.* at 307, 158 P. at 849 (citation omitted).

■ ¶ 14 On remand, the superior court decided anew whether the evidence warranted Johnson's dismissal. Judicial review, however, must be more restrained. It is the governor's power to remove this official, not ours. Our role is not to make personnel decisions for the executive branch, but merely to ensure that the executive branch complies with the constitutions of Arizona and the United States. We scrutinize the governor's action to determine whether the governor violated the statute, and thus exceeded her powers and infringed upon the legislature, by terminating a state official without cause when the legislature had limited the power to terminate to situations with cause.

See Morrison v. Olson, 487 U.S. 654, 693, n. 33, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988) (courts can review a termination for good cause without infringing on executive power). We also examine her action to determine whether she violated Johnson's right to due process protection of his interest in continued employment. See Johnson, 181 Ariz. at 303, 890 P.2d at 78.

■ ¶ 15 Our authority to review such decisions is not found in any statute, such as the A.R.A. Instead, it is implicit in the principle of judicial review embedded in the state constitution. See John D. Leshy, The Making of the Arizona Constitution, 20 Ariz. St.L.J. 1, 74 (Spring 1988).

■ ¶ 16 These observations guide us on the nature of our review. Our power is implicit, and our scrutiny must be narrow and restrained. The courts, as our supreme court noted in Farish, must look for capriciousness or lack of an evidentiary basis. 18 Ariz. at 303 and 307–8, 158 P. at 847 and 849. The standard of review is surely no more stringent than that we employ in the cases in which we review executive agency action by explicit grant of authority in the A.R.A. Accordingly, judicial review is confined to scrutiny for "arbitrary or capricious" action, "abuse of discretion," or acting without evidence supporting the decision. See, e.g., Berenter v. Gallinger, 173 Ariz. 75, 77, 839 P.2d 1120, 1122 (App.1992) (applying standard of review of administrative decisions). Applied to this case, the governor's action could be set aside only if her allegations against Johnson lacked evidentiary support, or if the allegations even if true, bore no relationship to his capacity or fitness for office. See generally, 3 Arizona Appellate Handbook, § 32.3.9.2.4.1, at 32–30 (2d ed.1998); Petras v. Arizona State Liquor Bd., 129 Ariz. 449, 452, 631 P.2d 1107, 1110 (App.1981) (review for arbitrary and capricious action is for "unreasoning action, without consideration and in disregard for facts and circumstances").

¶ 17 Limited review is dictated by our limited role of ensuring compliance with the statute and constitutional guarantees. We agree with what the Utah Supreme Court said when confronted with a similar case:

The Constitution and subsequent statutes have given to the Governor the right to appoint the principal state officers and the statute gives him the right to remove a commissioner of finance for cause. Accordingly, the judicial department should interfere only to the extent of determining whether the Governor has acted in an arbitrary manner. We believe the best rule to be that if there is any evidence of a legal and substantial basis reasonably tending to support the Governor's findings then he has not been arbitrary and his decision should be affirmed. We prefer this rule for the reason that it preserves the American tradition that the Governor should not remove an officer, which act carries with it the possible ruination of the man removed, until and unless there is some showing by misconduct or otherwise that he does not possess the qualifications, fitness and ability to perform the duties of his office. On the other hand, the rule permits the Governor to exact a high degree of efficiency from principal appointive officers without interference by the judicial department.

Taylor v. Lee, 119 Utah 302, 226 P.2d 531, 540 (Utah 1951). See also Kosoglad v. Porcelli, 132 Ill.App.3d 1081, 88 Ill.Dec. 174, 478 N.E.2d 489, 494–95 (Ill.App.1985) (giving "great deference" to determination of cause for removal; reviewing only for a determination of "arbitrary, unreasonable, or unrelated to the requirements of service").

■ ¶ 18 The use of the more deferential standard of review does not affect the outcome of this appeal. If the superior court was satisfied upon its independent review of the evidence that the governor had cause to discharge Johnson, then it necessarily found that the governor's decision was supported by substantial evidence and was not arbitrary, capricious or an abuse of discretion. Cf. Evans v. State ex rel. Arizona Corp. Comm'n, 131 Ariz. 569, 574, 643 P.2d 14, 19 (App.1982) ("A decision is not arbitrary and capricious if it is exercised honestly upon due consideration for facts and circumstances, even though there may be room for diverse opinions and it is believed that an erroneous conclusion has been reached.").

¶ 19 Our review is *de novo* because these are questions of law. *See Havasu Heights Ranch & Dev. Corp. v. Desert Valley Wood Prod., Inc.,* 167 Ariz. 383, 387, 807 P.2d 1119, 1123 (App.1990) (substantial evidence question is *de novo*); *Arizona State Ret. Bd., v. Gibson,* 2 Ariz.App. 609, 615, 411 P.2d 47, 53 (1966) (no deference to superior court); *3 Arizona Appellate Handbook* § 32.3.9.2.4.3, at 32–33. We conclude that the superior court correctly upheld the governor's decision.

¶ 20 The record reveals that from the time Mofford became governor, many sources including the Legislature, the Department of Corrections, private citizens, and even some board members bombarded her with various complaints about the Board. Governor Mofford became particularly concerned about the relations between the Board and the Department of Corrections ("DOC"). By agreement between the governor's office and the Board, the governor hired a former probation supervisor, Hank Duffie, to study the Board and to issue a report. Duffie's report was highly critical of the Board, stating as follows:

> During the last two years for a variety of reasons, the daily operation of the Arizona Board of Parsons [sic] and Paroles has been marked with conflict, confusion, inefficiency, abuse of power, and in internal turmoil. There is evidence of extremely poor staff morale, high turnover rate, disagreement between Board members, and conflicts with the Department of Corrections.

Governor Mofford's concerns were made known to the board members by providing each of them with a copy of Duffie's report.

¶ 21 On March 6, 1989—less than two months after the board members had been given copies of Duffie's report—Johnson served on a three-person panel conducting parole hearings at the Florence prison. The panel included board members Darwin Aycock and Patricia Gilbert. While Gilbert had served on the Board for several years, Aycock had been a member for only eight months. The panel's chairmanship rotated among members every three to four months.

At this time, the less experienced Aycock chaired the panel.

¶ 22 The panel heard parole applications from a number of inmates in the morning. The panel waited for additional inmates to be brought to them, but no other inmates were produced. At approximately 12:30 p.m., the panel was advised that other inmates scheduled for hearings that day could not be made available until 1:30 p.m. Aycock as chair advised the DOC officer providing security for the panel that if the inmates were not presented within five minutes, the panel would leave. The panel waited approximately five to ten minutes more and then departed. Johnson made no effort to work out the difficulties with DOC with respect to having the inmates presented and did not attempt to persuade the other panel members to wait for the remaining inmates scheduled for hearings that day. In her testimony, Patricia Gilbert stated that, "We made the decision" and "We agreed that it was time to go."

¶ 23 Governor Mofford was upset by the incident, especially given the past criticism of the Board which she had brought to its members' attention so recently. She decided to hold all members of the panel accountable, not just the chairman who may have actually made the final decision. Accordingly, she removed all of them from their positions on the Board. In her letter to Johnson, Governor Mofford wrote of the walk-out:

> That action, in light of past problems and overcrowded prison conditions reflects arrogance, irresponsibility, and disregard for the position of public trust you hold as a board member. In addition, your behavior as an experienced member of the board was an embarrassment to the State and has shaken public confidence in the State's parole system.

¶ 24 Johnson's main argument to the contrary is that he cannot be faulted for the "walk-out" because the chair made the decision. Johnson misses the point that he was faulted both for failing to prevent and for not trying to prevent the "walk-out." As he stipulated, Johnson made no attempt to convince the less experienced board chair or the other board member that they should wait for the remaining inmate hearings.

¶ 25 Johnson also seeks to justify the Board's behavior as a response to the DOC "playing games" with the Board. The DOC's conduct is not necessarily justification. Governor Mofford made the board members aware that she expected their cooperation in working with DOC. She was entitled to require that cooperation, and she did not get it.

¶ 26 Johnson argues that Governor Mofford was being pressured to remove board members and that this incident was merely an excuse for doing so. Whether or not the governor had other reasons for her actions, the behavior of the board members on this occasion gave her grounds for removal. We cannot go beyond the objectively demonstrable reasons for gubernatorial action and determine that the reasons were pretextual. The limited nature of our review, required by our constitution, requires that we defer to the action of a chief executive that is supported by some evidence.

¶ 27 We agree with the observations of another court, faced with a similar issue a century ago:

> We realize the responsibilities of this court in settling the line of demarkation between the legislative, executive, and supreme judicial powers, which, by constitutional obligation, must be kept forever separate and distinct. This vital line must be drawn by us alone, and we will endeavor to draw it with a firm and even hand, free alike from the palsied touch of interest and subserviency and the itching grasp of power. Should the legislative or executive departments of the state cross that line, we will put them back where they belong; but upon us rests the equal obligation of keeping upon our own side. This is a question not of discretion, but of law; a matter not of expediency, but of right.

*State ex rel. Caldwell v. Wilson,* 121 N.C. 425, 28 S.E. 554, 562 (N.C.1897).

¶ 28 We find evidentiary support for the governor's decision. The record includes evidence of the governor's allegations. These allegations related to Johnson's fitness for the office. The governor's decision was not arbitrary, capricious, an abuse of discretion, or unsupported by evidence.

¶ 29 The state defendants argue that Governor Mofford was also justified in removing Johnson for the two other reasons she listed in her letter. Because we have found that the "walk-out" incident provided sufficient basis, we need not discuss these other matters.

¶ 30 Johnson's second contention in this appeal is that the superior court erred in denying his demand for jury trial. Defending the superior court's action, the state defendants argue that a jury trial was precluded by this Court's holding in Johnson's first appeal. They argue that our statement that "the court should have independently determined Johnson's discharge claim and determined whether the Governor had sufficient legal cause under A.R.S. § 31–401(D) to remove Johnson from his position" (181 Ariz. at 305, 890 P.2d at 80) was a specific direction to the superior court to conduct a bench trial rather than a jury trial.

¶ 31 The defendants correctly state that a superior court is generally not free to deviate from a mandate giving specific directions. *Bryfogle v. Arizona Dep't of Corrections,* 153 Ariz. 598, 600, 739 P.2d 819, 821 (App.1987). They are also correct that the doctrine of the law of the case holds that "if an appellate court has ruled upon a legal question and remanded for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case." *Paul R. Peterson Constr., Inc. v. Arizona State Carpenters Health and Welfare Trust Fund,* 179 Ariz. 474, 478, 880 P.2d 694, 698 (App.1994) (citation omitted).

¶ 32 Our prior opinion did not direct a bench trial, however. The issue in the first appeal was merely whether the superior court had erroneously imposed the standard of review applicable under the A.R.A. Our holding that "the court should have independently determined" the issues only meant that Johnson had a right to have his claims resolved in the courts in the first instance and that he was not subject to an administrative proceeding with its limited scope of judicial review. Law of the case has no application where "the issue was not actually decided in the first decision. . . ." *Dancing*

*Sunshines Lounge v. Industrial Comm'n,* 149 Ariz. 480, 483, 720 P.2d 81, 84 (1986). The language quoted by the state defendants was not a specific direction to the superior court to conduct a bench trial, and thus the court was not obligated to refuse a request for a jury trial.

¶ 33 We find nothing in the record indicating that the superior court denied Johnson's request for jury trial because it felt compelled to do so by our prior appellate opinion. Furthermore, Johnson directs us to nothing in the record that reveals why his request was denied.

¶ 34 However, we will affirm on any grounds within the issues. *State v. Forteson,* 8 Ariz.App. 468, 471, 447 P.2d 560, 563 (1968). Our review of the record demonstrates that Johnson waived any right to a jury trial.

¶ 35 Prior to the first appeal, a motion to set the case for jury trial was filed. After the appeal and remand, however, Johnson's counsel filed a new motion to set specifically indicating that no jury trial was being demanded. The superior court issued an order the next month setting the case for trial to the court. Johnson made no objection. At a later pretrial conference, the superior court and counsel agreed that the case should be set for trial, and trial to the court was then reset for the date on which it was in fact ultimately held. Johnson made no objection. Finally, after Johnson obtained new counsel, he filed a "Demand for a Jury Trial." This occurred about five months after the pretrial conferences and nine months after the motion to set was filed.

¶ 36 The right to a jury trial is waived by failing to object to a proceeding without a jury and failing to request a jury. *Evans v. Lundgren,* 11 Ariz.App. 441, 444, 465 P.2d 380, 383 (1970). Johnson's waiver was even more unequivocal: He filed a motion to set in which he stated that a jury trial was not demanded. When Johnson's new counsel later sought a jury trial, he offered no reason why Johnson should be relieved of the earlier waiver. Under the circumstances, we find no reason to reverse based on the denial of the belated request for a jury trial. ¶ 37 For the reasons stated in this decision, we affirm the superior court's judgment dismissing Johnson's complaint.

NOEL FIDEL, Presiding Judge, and SARAH D. GRANT, Judge, concur.