## Amasa Hutchins, Mayor, etc., v. Edward B. Heffran.

1. CITIES AND VILLAGES—*Power of the Mayor to Remove Officers.*—The power to remove any officer appointed by him is given to the mayor of a city under Section 7, Article 2, Chapter 24, Revised Statutes, and he may exercise that power whenever he is of the opinion that the interest of the city requires it.

2. SAME—*Effect of Removal, etc.*—Whenever the mayor of a city, acting under Section 7, Article 2, Chapter 24, Revised Statutes, exercises his power of removal, the officer removed ceases to have any right to discharge the functions of the office. He does not continue in office until the council determine whether the action of the mayor is supported by sufficient reasons.

3. SAME—*Power of a Court of Equity to Review the Mayor's Act.*—The statute gives the mayor of a city the power to remove an officer appointed by him, and it is not in the jurisdiction of a court of equity to inquire whether the power has been exercised in a formal manner or whether the action is supported by sufficient reason.

4. COURTS OF EQUITY—*No Power to Determine Controversy Between the Mayor and Council of Cities.*—A court of equity is not a proper tribunal for determining disputed questions between the mayor and the council of a city concerning the appointment and removal of officers, or the rights of an appointed officer to the office which he claims.

5. SAME—*No Power to Determine Political Rights.*—A court of equity is conversant only with questions of property and the maintenance of civil rights. It has no jurisdiction to interfere with the public duties of any of the departments of the government.

**Memorandum.**—In equity. Bill for injunction. In the Circuit Court of Winnebago County; the Hon. JOHN D. CRABTREE, Judge, presiding; decree for complainant; appeal by defendant. Heard in this court at the December term, 1894. Reversed and remanded. Opinion filed January 24, 1895.

APPELLANT'S BRIEF, GARVER & FISHER, ATTORNEYS.

The mayor may remove any appointed officer, on any formal charge, whenever he shall be of the opinion that the interests of the city demand such removal, but he shall report the reasons for such removal to the council at a meeting to be held not less than five, nor more than ten, days after such removal. If the council, by a two-thirds vote of all its members, disapprove of such removal, such officer

shall thereupon be restored to the office from which he was so removed, but he shall enter into new bonds and take a new oath of office.    Art. 2, Sec. 21, Chap. 24, p. 456, Vol. 1, Starr & Curtis.

This is purely a political subject.    The subject-matter of the jurisdiction of the court of chancery is civil property. "Injury to property, actual or prospective, is the foundation on which jurisdiction rests."    "The court has no jurisdiction in matters merely criminal or merely immoral which do not affect any right to property."    Sheridan et al. v. Colvin et al., 78 Ill. 247.

A court of equity is not a proper tribunal for determining disputed questions concerning the appointment of city officers, or their right to hold office, such questions being purely of a legal nature.    Ibid.

A court of equity has no jurisdiction to entertain a bill to enjoin the mayor and aldermen from removing a party from an office and from preventing the party from discharging his duties after removal by them, as the party's remedy at law is complete.    Delahanty v. Warner et al., 75 Ill. 185.

It is conversant only with questions of property, and the maintenance of civil rights.    It has no jurisdiction to interfere to aid a party in the violation of a public law, to overrule the policy of the State, or interfere with the public duties of any of the departments of government.    City of Chicago et al. v. Wright, 69 Ill. 326.

A grant of power to the governor to remove an officer for a specified cause, implies authority to decide as to the existence of the cause.    State v. Dougherty, 25 La Ann. 119.

APPELLEE'S BRIEF, N. C. WARNER AND A. H. FROST, ATTORNEYS.

Appellee contended that the fire marshal, duly appointed and qualified, in the actual possession and enjoyment of a lucrative office, could successfully invoke the aid of a court of chancery to prevent an unauthorized assault upon his possession, and in support of this contention cited Brady v.

Sweetland, 13 Kan. 41; Ry. Co. v. Ry. Co., 36 La. Ann. 561; Ryan v. Brown, 18 Mich. 212; Meachem's Public Offices and Officers, Sections 994, 995 and 997; Osborn v. Bank of U. S., 9 Wheat. 738; Cooper v. Alden, Harr. Chy. 72; Brown v. Gardner, Harr. Chy. 291; Wheeler v. Board of Fire Engineers of New Orleans (La. Ann.), 15 So. Rep. 179; Armitage v. Fisher, 26 N. Y. Sup. 167; 3 Pom. Eq. Jur., Sec. 1357, p. 2091; Mayer v. Stone Cutters' Assn., 47 N. J. Eq. 528; 2 Story's Eq. Jur. (13th Ed.), Secs. 927, 928, p. 233; 2 Story's Eq. Jur., Secs. 928, 933; Reid v. Moulton, 51 Ala. 263; Ex parte Scott, 47 Ala. 411; High on Injunctions (3d Ed.), Secs. 1212, 1315; Hilliard on Injunctions (3d Ed.), Sec. 1, p. 486; Kerr et al. v. Krego et al., 47 Pa. St. 295.

Mr. Justice Harker delivered the opinion of the Court.

This appeal is prosecuted from a decree of the Circuit Court enjoining appellant as mayor of the city of Rockford from forcibly expelling appellee from the office of fire marshal of the city and from any interference with him in his functions and powers as chief of the fire department and from proceeding in any manner against him with respect to said office otherwise than upon formal charges as authorized by statute.

Among the appointive offices of the city is that of fire marshal, the head of the fire department, to be appointed by the mayor with the consent of the city council. The appointee holds the office for one year, unless removed, and until his successor is appointed and qualified. Appellee was appointed to this office in the spring of 1891, and was filling it at the time appellant was elected mayor in the spring of 1893. After being installed into his office as mayor, appellant nominated one Stephen T. Julian as fire marshal and sent his name to the city council for confirmation. Appellee was at the time an applicant for reappointment. The appointment of Julian was neither confirmed nor rejected, but was, on motion in the city council, tabled by a vote of nine to five, and was not acted upon afterward. Appellee continued to exercise the functions of the office

for a year longer. Appellant then again nominated Julian, but the city council rejected it by a vote of eleven to three. He then nominated Frank E. Peats, which nomination was rejected by a like vote. He then nominated Frank E. Thomas, but he was rejected by like vote.

It is quite evident from the testimony in the record that the wrangle between the mayor and the city council had waxed warm, and that a majority of that body were determined that appellee should be continued as fire marshal, whether acceptable to the mayor or not, while the mayor was as fully determined that he should not be continued. Accordingly, on the 7th of May, 1894, appellant removed appellee as fire marshal, directed him to vacate the office and turn over the property of the department in his possession to a subordinate officer, and threatened to forcibly eject him if he refused to comply. On the next day this bill for an injunction was presented to the master in chancery, who entered an order temporarily restraining appellant from any further action. On a motion to dissolve made before the judge in vacation, the temporary injunction was so modified as to restrain appellant from all interference with appellee in the office until he should be lawfully removed, or his successor appointed and qualified, which injunction remained in effect until the decree for perpetual injunction was rendered on the hearing.

Because of the refusal of the city council to confirm nominations made by appellant, the restraining orders entered in vacation, and the final decree, appellee has been continued in office nearly two years beyond the expiration of his term.

We waive a discussion of the several points urged by appellant that the decree does not conform to the bill, that appellee is a mere *de facto* officer who can claim nothing for himself in equity, and that the surety on his bond is not liable beyond the time limited in his commission, and consider at once the two questions which we regard as sufficiently decisive of the case.

1. Has the mayor of a city the power to remove an ap-

pointed officer, and can such officer, after notice of such removal, continue to hold the office until the action of the mayor is passed upon by the city council?

2. Has a court of chancery jurisdiction to interfere with a mayor in the exercise of a statutory power to remove?

Sec. 7, Art. 2, Chap. 24 R. S., reads: "The mayor shall have power to remove any officer appointed by him on any formal charge, whenever he shall be of the opinion that the interests of the city demand such removal, but he shall report the reason for such removal to the council at a meeting to be held not less than five days, nor more than ten days, after such removal; and if the mayor shall fail or refuse to file with the city clerk a statement of the reasons for such removal, or if the council shall, by a two-thirds vote of all its members, authorized by law to be elected by yeas and nays to be entered upon the record, disapprove of such removal, such officer shall thereupon become restored to the office from which he was so removed; but he shall give new bonds and take a new oath of office. No officer shall be removed a second time for the same offense."

The power to remove is clearly given by this section, and the mayor may exercise that power whenever he is of the opinion that the interests of the city demand it. Whenever he does exercise it, the officer removed ceases to have any right to discharge the functions of the office. It is not within the contemplation of the statute that he should continue until the city council determine whether the action of the mayor is supported by sufficient reasons. That he is out of the office with no right to exercise any of the functions, is clearly indicated by the provisions for his restoration in the event of the mayor failing to report this reason for such removal or in the city council deciding by a two-thirds vote that the mayor had not sufficient reason for removing, and by the further provision that when restored he shall give a new bond and take a new oath of office. It is idle to contend that the office is not vacant when the statute provides that if the council shall disapprove of the mayor's action he shall "thereupon become restored to the office from which he was removed."

It is contended that inasmuch as the statute provides for the removal upon formal charge, all other modes of removal are excluded, and that appellee is entitled to hold the office because the mayor, at the time he undertook to exercise the power, made no formal charge against him. It is further contended that all removals must be for reasonable cause and not upon mere arbitrary exercise of discretion; that specific charges must be made and the accused be given an opportunity to be heard. We will not undertake to state what would be necessary to constitute a formal charge or what would be a reasonable cause for removal.

It is sufficient for us to say that the statute gives the mayor the power to remove, and that it is not the business of a court of equity to inquire whether the power has been exercised in a formal manner or whether the action of the mayor is supported by sufficient reason.

A court of equity is not a proper tribunal for determining disputed questions between the mayor and the council of a city concerning the appointment and removal of officers, or the rights of an appointed officer to an office which he claims. It is conversant only with questions of property and the maintenance of civil rights. It has no jurisdiction to interfere with the public duties of any of the departments of government. City of Chicago et al. v. Wright, 69 Ill. 326; Delehanty v. Warner et al., 75 Ill. 185; Sheridan et al. v. Cohen et al., 78 Ill. 247.

While the contests in the above cited cases were not exactly the same as the one in this case, the opinions clearly indicate the views of our Supreme Court upon the principles involved and that we are in harmony with them.

We have carefully examined the authorities cited by appellee. The only one that supports his contention is that of Brady v. Sweetland, 13 Kan. 41, and the reasoning there employed does not harmonize with the views of our Supreme Court.

The decree will be reversed with directions to the Circuit Court to dissolve the injunction and dismiss the bill for want of equity.