LEONARD W. KOSOGLAD, Plaintiff-Appellant, v. JOHN C. PORCELLI *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 84—2422

Opinion filed April 23, 1985.

Hoffman & Davis, of Chicago (Maurice L. Davis, of counsel), for appellant.

Ronald S. Cope, John B. Murphey, and Peter M. Barron, all of Ancel, Glink, Diamond, Murphy & Cope, P.C., of Chicago (David L. Ader, of counsel), for appellees.

JUSTICE PERLIN delivered the opinion of the court:

Leonard W. Kosoglad, plaintiff, appeals from an order of the circuit court of Cook County dismissing on the merits his complaint wherein he requested the trial court to hold that his removal from the Lincolnwood board of fire and police commissioners (board of commissioners) by the board of trustees of the village of Lincolnwood (village board) was unlawful.

In 1982, plaintiff was appointed by the mayor of Lincolnwood to the board of commissioners for a three-year term. On September 15, 1983, defendant Porcelli, mayor of Lincolnwood, presented to plaintiff and to the village board six written charges against plaintiff, and requested that the village board vote to remove plaintiff from the board of commissioners.

The charges stated that plaintiff had sought to "undermine the authority of the chief of police by interfering in personnel matters under the jurisdiction of the chief" in that at a meeting held on September 7, 1983, attended by plaintiff, the chief and several village police officers, plaintiff made "disparaging statements" about the chief, including having advised the chief that his retention as chief "was dependent upon" plaintiff's "help," that plaintiff had "criticized the chief in his operation of the department and, in particular, how he dealt with his supervisory personnel" and had advised the officers that "they should have tried harder to obtain pay raises" and that plaintiff "requested the chief to remove 50% of the disciplinary records" from one officer's personnel files. It was charged that these actions "are contrary to the function and purpose of the business of a member of the *** [Board of Commissioners]," are "improper and undermine the morale of the police department. Such conduct is also contrary to the letter and spirit of the law in that it is outside the scope of authority given to a Commissioner, and prevents that Commissioner from remaining objective in the evaluation of police officers for promotion within the department."

A hearing on the charges was held by the board at the village board's regularly scheduled meeting of September 19, 1983. Village attorney Cope stated that he would serve only as an advisor to the village board on matters of procedure and objections; another attorney had been retained by the village to present to the village board the evidence against plaintiff.

Plaintiff, the chairman of the board of commissioners, the chief of police, the mayor, and the four police officers who attended the September 7, 1983, meeting presented testimony. While the evidence was somewhat contradictory, for purposes of this opinion it is sufficient to say that the essence of the testimony was as follows: On September 7, plaintiff called the chief and four other officers to arrange a meeting to discuss what plaintiff termed a "very severe morale problem." Plaintiff did not advise the mayor or other commissioners of the alleged morale problem or of the meeting which he had arranged. At the meeting plaintiff indicated to the chief that some of the officers were concerned that the chief was placing into their personnel files critical memos which allegedly related to trivial matters. According to some of the participants in the meeting, plaintiff suggested the chief should remove "50%" of the memos in the personnel files.

Plaintiff discussed, or criticized, the manner in which the chief handled personnel problems. Testimony was elicited to the effect that plaintiff advised the officers that if they, rather than the chief, had presented their request for higher pay to the village board, they would have received larger raises.

The chairman of the board of commissioners testified that it was not the duty of the board of commissioners to intercede in disputes between the chief and police officers, nor was it the policy of the board of commissioners to undertake informal investigations of the police department or to comment on salary negotiations. A year earlier the chairman, in the presence of the mayor, had requested plaintiff to not interfere in police department business.

At the close of the evidence, the village board voted to continue the matter to its next regularly scheduled meeting. At that next meeting, the village board went into executive (closed) session to consider plaintiff's removal. Following the executive session, the village board returned to the public meeting and voted to remove plaintiff from the board of fire and police commissioners, with five members voting for removal and one member abstaining.

Plaintiff filed a three-count complaint in the circuit court to challenge his removal. Count I sought a declaratory judgment that plaintiff's removal was unlawful, count II sought administrative review of

the removal and count III petitioned for a writ of *certiorari*. Counts I and II were dismissed by the trial court; plaintiff subsequently amended count III to include substantially the same allegations as were contained in the stricken counts.

The trial court denied defendants' motion to dismiss count III and ordered defendants to file a certified record of the evidentiary proceedings had before the village board. After reviewing the record, and receiving the written and oral arguments of counsel, the court refused to quash the village board proceedings, and dismissed plaintiff's complaint.[1]

The essence of plaintiff's allegations in this court is that the village board's removal of plaintiff as a member of the board of fire and police commissioners was unlawful because: (1) there was no sufficient "cause" shown for his removal; (2) village attorney Cope's participation rendered the hearing before the village board unfair and; (3) the village board's closed executive session in which plaintiff's removal was considered violated the Illinois Open Meetings Act (Ill. Rev. Stat. 1983, ch. 102, par. 41 *et seq.*). Defendants cross-appeal, contending that the trial court erred in denying, without a hearing, defendant's petition for costs and attorney fees under section 2—611 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—611). We affirm the trial court in all respects.

The parties agree that section 10—2.1—3 of the Illinois Municipal Code (Ill. Rev. Stat. 1983, ch. 24, par. 10—2.1—3) applies here. That statute provides in part:

> "Members [of the Board of Fire and Police Commissioners] shall not be subject to removal, except for cause, upon written charges, and after an opportunity to be heard within 30 days in his or her own defense, before a regular meeting of the governing body of the municipality for which they have been appointed. A majority vote of the elected members of such governing body shall be required to remove any such member from office."

The relevant Lincolnwood ordinance mirrors this statutory language.

Defendants have contended throughout these proceedings that the judiciary is without authority to review whether adequate "cause" for plaintiff's removal was shown. They posit that since members of the

---

[1]Writs have been abolished in Illinois. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1501.) The trial court's order, requiring defendants to file a certified copy of the removal proceedings, held before the village board, was issued in lieu of a writ of *certiorari*. Thereafter the court "quashed" the writ, *i.e.*, ruled in favor of defendants.

board of commissioners are "political appointees" holding policy-making positions within the municipality and because the General Assembly has committed the responsibility and discretion for their removal to a local legislative body—the village board—the courts are without authority to review such action. We do not agree.

■■ The position here advanced by defendants—that the village board has unbridled and unreviewable discretion to remove commissioners—was, at one time, the law of the State. In *People ex rel. Stenzel v. Ireland* (1960), 28 Ill. App. 2d 291, 171 N.E.2d 241, the applicable statute provided only that members of the board of fire and police commissioners could be removed by a majority vote of the city council. In rejecting a dismissed commissioner's request for judicial review of his removal the court held:

> "Some point is also made that notice, and presumably, a hearing should have been had as to the Board of Fire and Police Commissioners. While the statute provides for a specific method for suspension or discharge of firemen or policemen by setting up requirements or [*sic*] written charges, notice, and for a hearing on the charges, no such requirements are prescribed for removal or discharge of the members of the Board of Fire and Police Commissioners. The Council is given the right to remove such members, presumably without hearing or charges, or any reason given. The Court has no right to inquire into the discretion exercised by the Council or to review the manner of removal." 28 Ill. App. 2d 291, 295; see also *Hutchins v. Heffran* (1895), 56 Ill. App. 581, *aff'd* (1896), 160 Ill. 550.

In 1965 the General Assembly amended section 10—2.1—3 (Ill. Rev. Stat. 1965, ch. 24, par. 10—2.1—3) to provide that "[m]embers [of the Board of Fire and Police Commissioners] shall not be subject to removal, except for cause, upon written charges and after an opportunity to be heard ***. A majority vote of the elected members of such governing body [of the municipality] shall be required to remove any such member from office." We think the legislative amendment authorizing removal only for cause to be not without significance. It is recognized that an amendment to an unambiguous statute indicates a legislative intention to change the law, and it is presumed that every amendment is made for some purpose; courts must give effect to the amended law in a manner consistent with the amendment. (*People v. Youngbey* (1980), 82 Ill. 2d 556, 563, 413 N.E.2d 416.) It has long been held in this State that in cases where removal from office could only be for "cause," such determination was judicially reviewable. See, *e.g., Murphy v. Houston* (1928), 250 Ill. App. 385.

Defendants contend that the fact that removal is dependent on cause does not permit the judiciary to review whether cause was in fact shown, citing to *Wilcox v. People ex rel. Lipe* (1878), 90 Ill. 186. In *Wilcox*, our supreme court construed a constitutional provision from the 1870 Illinois Constitution which declared that "[t]he Governor shall have the power to remove any officer whom he may appoint, in case of incompetency, neglect of duty or malfeasance in office" to preclude judicial review of the Governor's exercise of his removal power:

> "The conclusion is, that the power of removal from office in the present case existed in the Governor; that the manner of his exercise of the power can not be questioned by the courts, and must be held valid." 90 Ill. 186, 207.

However, in *Lunding v. Walker* (1976), 65 Ill. 2d 516, 359 N.E.2d 96, the court substantially modified the *Wilcox* holding. In *Lunding* the plaintiff challenged the Governor's effort to remove him from the State Board of Elections. Construing the constitutional provision relating to the Governor's removal power (which language was virtually identical to that found in the 1870 Constitution), the court held that "because of the unique character of the office held by plaintiff, the Governor could only remove plaintiff for cause. Further, we hold that the determination of the adequacy of the cause for removal is, in this case, judicially reviewable." 65 Ill. 2d 516, 518-19.

A factor relied upon by the court in *Lunding* for holding that judicial review of the Governor's removal power was appropriate was the court's emphasis of the importance of an independent State Board of Elections.

> "It is plain that the legislators intended, and the public interest demands, that Board members not be amenable to political influence or discipline in the discharge of their official duties. To subject a neutral, bipartisan, and independent board to the unbridled whim of the Governor under the *Wilcox* rule would destroy its purpose and its efficacy. As the Supreme Court made clear in *Humphrey's Executor*, 'it is quite evident that one who holds his office only during the pleasure of another cannot be depended upon to maintain an attitude of independence against the latter's will.' (295 U.S. 602, 629, 79 L. Ed. 1611, 1620, 55 S. Ct. 869.) If the holding of this court in *Wilcox* were extended and applied to the removal of the members of the State Board of Elections, the political independence of that body envisioned by the delegates to the constitutional convention and sought to be achieved by the legislature would

be jeopardized. We therefore hold that the Governor can only remove a member of the State Board of Elections for cause." 65 Ill. 2d 516, 527.

The purpose of the board of commissioners is, *inter alia*, to conduct "fair and impartial" hearings of charges brought against police officers by municipalities (Ill. Rev. Stat. 1983, ch. 24, par. 10—2.1—17) and to assist in the promotion of officers by maintaining a list of "eligibles" based upon their "relative excellence" (Ill. Rev. Stat. 1983, ch. 24, par. 10—2.1—14) and to enact rules to "provide for promotion in the fire and police departments ***." Ill. Rev. Stat. 1983, ch. 24, par. 10—2.1—15.

The board of fire and police commissioners shares many of the characteristics which the supreme court found relevant with regard to the State Board of Elections in *Lunding*. The board of commissioners is appointed by the mayor, with the consent of the board of trustees (Ill. Rev. Stat. 1983, ch. 24, par. 10—2.1—1), while members of the State Board of Elections are appointed by the Governor with the advice and consent of the Senate (Ill. Rev. Stat. 1983, ch. 46, par. 1A-4). The board of commissioners was intended by the General Assembly to be an independent agency free from political and other influences in order that it may perform its duties in a fair and impartial manner. (*Westby v. Board of Fire & Police Com.* (1977), 48 Ill. App. 3d 388, 362 N.E.2d 1098.) Like the State Board of Elections, the legislature mandated that the board of commissioners be bipartisan; no more than two of its three members may be of the same political party (Ill. Rev. Stat. 1983, ch. 24, par. 10—2.1—3). In sum, both agencies were established by our General Assembly so that they would be "neutral, bipartisan and independent" in the performance of their significant responsibilities.

In consideration of the above, we conclude that the present statutory scheme authorizes judicial review of the adequacy of the cause for removal of members of the board of fire and police commissioners under the instant statute. We do believe, however, that the courts should pay great deference to the local governing body's determination of "cause" for removal in such circumstances.

■ While no statutory definition of "cause" is provided in the present statute, courts construing that term in similar statutory settings have held that "[t]he authority *** to remove only for cause is not an arbitrary one, but is to be exercised on just and reasonable grounds. The record must show the board's order is based upon evidence fairly tending to sustain it." (*Fantozzi v. Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 360, 189 N.E.2d 275.) The supreme court in *De-*

*partment of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 551-52, 426 N.E.2d 885, stated:

> "There is no statutory definition of 'cause.' 'Cause' has been judicially defined as 'some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position.' [Citations.]
>
> Due to the paucity of specific guidance, several appellate decisions in this State have held that the question of whether there is sufficient cause for discharge is generally for the agency to determine. [Citations.] \*\*\*. These cases, however, make it clear that the Commission's determination to discharge might be overturned only if its decision is arbitrary, unreasonable, or unrelated to the requirements of service. [Citation.]
>
> We agree with the appellate court decisions finding that the question of whether cause for discharge exists should be determined by the administrative agency. We therefore hold that the agency's decision as to cause will not be reversed unless it is arbitrary, unreasonable, or unrelated to the requirements of service."

Here, the village board determined that plaintiff's actions in injecting himself into police department affairs and in calling a meeting between the chief, several of his men and himself, during which plaintiff criticized various aspects of the chief's administration of the police department was: "contrary to the function and purpose" of a commissioner; "improper and undermined" the morale of the police department; and "contrary to the letter and spirit of the law," as it was outside of the scope of authority given a commissioner and prevented him from "remaining objective" when dealing with the board of commissioner's police disciplinary and promotion duties.

Plaintiff had been previously advised to not interfere with internal police affairs. Nevertheless, he again injected himself into matters which were internal police matters, and not related to affairs over which the board of commissioners had authority. This conduct, even assuming that plaintiff's motives were pure, was contrary to the village policy of noninterference with the police department. It seemingly contradicted plaintiff's responsibilities as a commissioner since, by statute, the Board of Commissioners is forbidden to make rules which "govern the operation of the police or fire department or the conduct of its members unless the governing body of the municipality specifically authorizes" the board of commissioners to so act. Ill. Rev.

Stat. 1981, ch. 24, par. 10—2.1—5.

We believe the plaintiff's actions could reasonably be found to constitute sufficient cause for his removal from the board of commissioners.

■ Plaintiff next contends that the manner of village attorney Cope's participation at the hearing before the village board in some manner resulted in plaintiff receiving an unfair hearing. The gist of plaintiff's argument is that because the record indicates that Mayor Porcelli requested Cope's assistance in drafting the written charges brought against plaintiff by the mayor, Cope's subsequent role as "advisor" to the village board during the hearing in some manner "tainted" the proceedings against plaintiff. We find this contention to be without merit. Plaintiff has neither pointed to improper statements or evidentiary rulings by Cope nor suggested any conduct by Cope which interfered with plaintiff's presentation of his case before the board.

Similarly, plaintiff contends that because Cope participated in the drafting of the charges, Cope could not "as a matter of professional responsibility, endeavor to defeat the charges which he, as a lawyer, had prepared for a client." Plaintiff then cites to cases in which it was held that a person with a "personal interest" in a case should not sit in "judgment" on that case. We do not perceive the applicability of that maxim to the instant case. First, plaintiff has not shown that Cope had any "personal interest" in these proceedings. We decline plaintiff's suggestion that Cope's drafting of the mayor's charges evidences a personal interest in the proceedings against plaintiff. Second, Cope did not sit in judgment here. The village board, of which Cope was not a member, sat in judgment.

In *Breitling v. Solenberger* (W.D. Va. 1984), 585 F. Supp. 289, a schoolteacher challenged his dismissal on due process grounds because of the school board's use of its retained counsel as both a representative of the prosecutor (the school superintendent) and as a representative of the adjudicatory body (the school board). The court rejected the contention:

> "In the case at hand *** the school board did not participate in any investigation of Breitling, nor does the complaint allege that any school board members were involved in the initial dismissal decision by the superintendent. Breitling asserts only that he did not receive the process due him because the same attorney in essence 'prosecuted' him by presenting the superintendent's case for dismissal and also advised the school board throughout the hearing on procedural and evidentiary matters.

Moreover, the school board attorney also made a recommendation on the close of evidence that the school board confirm the superintendent's dismissal decision. This dual role of the school board attorney, however, falls far short of the combination of functions that the [Supreme] Court unanimously refused to proscribe as a due process violation in *Withrow*. A school board, after all, can hardly be said to be its hired counsel's puppet. The plaintiff has made neither allegations nor showing that this is the case here. The procedures employed by the school board do not present an intolerable risk of prejudgment or partiality. Acceptance of plaintiff's contention would require that either the superintendent would have to present his case for dismissal without legal assistance, or that the school board must retain additional counsel for the superintendent alone in the context of such an administrative hearing ***.

In sum, the court finds that, as a matter of law, the school board's reliance on its attorney, who also presented the case for the superintendent, did not violate Breitling's right to constitutional due process." (*Breitling v. Solenberger* (W. D. Va. 1984), 585 F. Supp. 289, 291.)

See also *Kaiser v. Dixon* (1984), 127 Ill. App. 3d 251, 468 N.E.2d 822.

■ Plaintiff next contends that the village board violated the Illinois Open Meetings Act (Act) when it met in closed session to consider plaintiff's removal after the presentation of evidence in an open meeting. We do not agree. The Act itself enumerates exceptions to its requirement that meetings of public bodies be open. Section 2 of the Act states, in part:

"This section does not prevent any body covered by this Act from holding closed sessions to consider information regarding appointment, employment or dismissal of an employee or officer, or to hear testimony on a complaint lodged against an employee or officer to determine its validity." (Ill. Rev. Stat. 1983, ch. 102, par. 42.)

In *Jewell v. Board of Education* (1974), 19 Ill. App. 3d 1091, 312 N.E.2d 659, the court found no violation of the Act when, after a public hearing on the "disemployment" of the plaintiff, the board retired to executive session to "consider plaintiff's case." In *Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 326-27, 388 N.E.2d 398, the supreme court endorsed the analysis set forth in *Jewell*. In *Davis v. Board of Education* (1978), 63 Ill. App. 3d 495, 380 N.E.2d 58, the court rejected the plaintiff's contention that the Act was violated when, after a public hearing on plaintiff's removal, the board took a

"tentative vote" in closed session. We find that these cases support the proposition that the Act allows a public body to consider dismissal matters in a closed session, so long as their final action is taken at an open meeting, as occurred here.

■ Plaintiff raises several other issues which may be readily disposed of. He argues that the trial court erred in dismissing count I of the complaint (seeking a declaratory judgment that plaintiff's removal was unlawful). First, as we have stated, we do not find plaintiff's dismissal unlawful. Secondly, after dismissal of count I, plaintiff amended count III of his complaint to include the same allegations as were found in count I. The trial court's dismissal of count III, after a review of the merits, resulted in the court's consideration of the substantive allegations of count I. Thus any error in the dismissal of count I was inconsequential. Plaintiff contends that the trial court erred in failing to grant his motion for summary judgment. The record shows that while plaintiff filed a motion for summary judgment, he failed to move for a hearing thereon, and the trial court never ruled on the motion. Since, as has been stated, plaintiff was not entitled to judgment in his favor, there can be no error due to the trial court's failure to rule otherwise.

■ Plaintiff also contends that the written charges made against him were impermissibly vague. However, he failed to so argue before either the village board or the trial court, and, therefore, he has waived consideration of this issue in this appeal. *Lion Specialty & Properties, Inc. v. City of Chicago Zoning Board* (1969), 107 Ill. App. 2d 354, 247 N.E.2d 30.

■ Defendants have cross-appealed, arguing that the trial court erred in refusing to grant their motion for expenses and attorney fees. The record shows that in response to certain allegations found in count I of the complaint (alleging, *inter alia*, a "conspiracy" among defendants to remove plaintiff from the commission without cause, and that defendants engaged in "unlawful and criminal" misconduct in the course of the board's executive session), defendants filed a petition pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—611). That statute provides, in part:

> "Allegations and denials, made without reasonable cause and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleadings, together with a reasonable attorney's fee ***."

A successful movant must demonstrate that the allegations were both (1) made without reasonable cause, and (2) untrue.

At the conclusion of the case, the trial court denied defendants' motion for expenses. Defendants now contend that the trial court erred in not requiring a hearing to be held on the motion.

The laudable purpose of this statute is to prevent abuses of the judicial process. (*Marczek v. Powers Label Co.* (1975), 31 Ill. App. 3d 939, 335 N.E.2d 172.) The statute being penal in nature, it should be invoked only in those cases falling strictly within the statutory terms. (*Marczek v. Powers Label Co.* (1979), 31 Ill. App. 3d 939, 335 N.E.2d 172.) The allowance of relief is within the discretion of the trial court, and its decision will not be overturned unless it is shown that the court abused its discretion. *Pole Realty Co. v. Sorrells* (1981), 84 Ill. 2d 178, 417 N.E.2d 1297.

It has been held that "the necessity for a hearing, of what type, has been said to vary with the circumstances surrounding the motion." (*Grover v. Commonwealth Plaza Condominium Association* (1979), 76 Ill. App. 3d 500, 512, 394 N.E.2d 1273.) Where the court can determine the issues presented without a hearing, none is required. (*Grover v. Commonwealth Plaza Condominium Association* (1979), 76 Ill. App. 3d 500, 394 N.E.2d 1273.) It has also been held that no hearing is required where such hearing "would have involved virtually a retrial of all of the basic issues raised in the pleadings." *Voss v. Lakefront Realty Corp.* (1977), 48 Ill. App. 3d 56, 72, 365 N.E.2d 347.

Inherent in the trial court's remarks made in denying defendants' motion here was a finding that plaintiff's allegations, even if proved to be untrue, were not made without reasonable cause. (See *Farwell Construction Co. v. Ticktin* (1978), 59 Ill. App. 3d 954, 376 N.E.2d 621.) Based upon the above, and our own review of the record, we cannot say that the trial court's decision denying defendants' motion was an abuse of discretion.

For the reasons stated herein, the trial court's order dismissing plaintiff's complaint and denying defendants' motion for expenses is affirmed.

Affirmed.

STAMOS, P.J., and HARTMAN, J., concur.