DAVID EALEY, Plaintiff-Appellant, v. THE BOARD OF FIRE AND PO-LICE COMMISSIONERS OF THE CITY OF SALEM *et al.*, Defendants-Appellees.

Fifth District No. 5—88—0265

Opinion filed August 9, 1989.—Rehearing denied September 19, 1989.

112

Thomas F. McGuire & Associates, Ltd., of Long Grove, for appellant.

Branson, Jones & Stedelin, of Salem, for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, David Ealey, a police officer with the City of Salem, appeals from the judgment of the circuit court of Marion County affirming the findings of defendant, Board of Fire and Police Commissioners of the City of Salem (Board). The Board found plaintiff guilty and terminated his employment. Plaintiff raises several issues on appeal. This court affirms.

On July 31, 1987, plaintiff filed a complaint for administrative review in the circuit court alleging that the findings by the Board were arbitrary, capricious, contrary to the law and against the weight of the evidence. The circuit court affirmed the Board's findings of fact, which are summarized as follows:

(1) That plaintiff on numerous occasions allowed a female, Rue Woodruff, to ride in a squad car while he was on duty for the sole purpose of pursuing a social relationship.

(2) That plaintiff drove outside the city limits while on duty to meet Woodruff to engage in activities unrelated to his duties as a police officer.

(3) That plaintiff while on duty transported Woodruff in his squad car while responding to a police emergency call.

(4) That plaintiff allowed Woodruff to operate an automobile in an intoxicated condition.

(5) That plaintiff while on duty used the Salem Police Department telephone for the purposes of making various long distance calls to Woodruff which were personal calls and unrelated to his official duties.

(6) That plaintiff stopped a juvenile motorist, confiscated a bottle of whiskey and delivered it to Woodruff.

(7) That plaintiff while on duty transported a female, Kenya Smith, for purposes unrelated to his official duties.

(8) That plaintiff committed acts of voyeurism.

(9) That plaintiff while on duty met with a female, Lynne Arnold, on six separate occasions for social purposes unrelated to his official duties.

Plaintiff's first issue on appeal is whether he was denied his constitutional rights of due process and a fair hearing. (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, §2.) Plaintiff argues that the city attorney should not have participated in the Board hearing because he gave legal advice to Police Chief Krueger during the administrative interview.

At the administrative interview, plaintiff refused to answer certain questions upon the advice of his counsel. Chief Krueger telephoned the city attorney, who advised him that he had the option of ordering plaintiff to answer the questions. Chief Krueger returned to the interview and stated that he was to make note of the objections to the interview and proceed with the interview because no charges had been filed. After another objection, Chief Krueger stated that pursuant to the regulations of the police department, plaintiff was required to answer all questions asked and cooperate with the investigation, otherwise his refusal would be considered an act of insubordination.

After the administrative interview, Chief Krueger's own attorney, Brockton Lockwood, prepared the petition for termination of plaintiff's employment with the police department of the City of Salem. At the Board hearing, the city attorney acted as counsel for the Board and not for Chief Krueger. Plaintiff cites two cases to support his proposition, but each case is factually distinguishable.

In *Gigger v. Board of Fire & Police Commissioners* (1960), 23 Ill. App. 2d 433, 163 N.E.2d 541, the attorney for the board presented, interrogated and cross-examined the witnesses as well as made rulings on questions of law and fact. The members of the board remained mute during the hearing. In this case, the city attorney advised Chief Krueger that he could order plaintiff to answer questions at the interview. The city attorney neither participated in the Board hearing to the extent as in *Gigger* nor acted as Chief Krueger's attorney.

In *Sommer v. Goetze* (1981), 102 Ill. App. 3d 117, 429 N.E.2d 901, the court held it was "an abuse of discretion to refuse appointment of a disinterested attorney to prosecute the charges" (102 Ill. App. 3d at 120, 429 N.E.2d at 903) because the assistant State's Attorney was not only prosecuting the case but was also the complaining party and key witness. In this case, the city attorney initially acted as counsel for the city when he advised Chief Krueger that he could order plaintiff to answer the questions. At the hearing, the city attorney acted only as counsel for the Board and did not have any personal interest or other role in the litigation.

The Board cites *Kosoglad v. Porcelli* (1985), 132 Ill. App. 3d 1081, 478 N.E.2d 489. In *Kosoglad,* the plaintiff contended that when the mayor requested the village attorney's assistance in drafting the written charges against plaintiff and that same attorney was an advisor to the board during the proceedings against the plaintiff, he was denied a fair trial. The court found the argument without merit, stating, "[p]laintiff has neither pointed to improper statements or evidentiary

rulings by [the village attorney] nor suggested any conduct by [the village attorney] which interfered with plaintiff's presentation of his case before the Board." (132 Ill. App. 3d at 1090, 478 N.E.2d at 495.) The court further found that the plaintiff did not show that the attorney had any personal interest in the outcome of the proceedings and that the attorney did not "sit in judgment."

In this case, plaintiff has not shown any improper statements or rulings by the city attorney, has not shown any interference with the presentation of his case or any personal interest. The only involvement by the city attorney prior to hearing was a single phone conversation with Chief Krueger during the administrative interview prior to the time any charges were filed. For these reasons, this court finds plaintiff's argument without merit.

■ Plaintiff then argues that the Board violated the Open Meetings Act (Act) (Ill. Rev. Stat. 1987, ch. 102, par. 41 *et seq.*) and its own rules and thus the finding of guilty and subsequent termination should be reversed. Although the Board's own rules state that all hearings must be public, the Act recognizes an exception which states in part:

> "This section does not prevent any body covered by this Act from holding closed meetings to consider information regarding appointment, employment or dismissal of an employee or officer or to hear testimony on a complaint lodged against an employee or officer to determine its validity." (Ill. Rev. Stat. 1987, ch. 102, par. 42.)

In this case, this court finds that the closed meeting fell well within the listed exceptions of the Act. Even though the Board failed to follow its own rules, this court finds that plaintiff has not shown prejudice by such actions.

■ Plaintiff also argues that since the hearing was closed, the veracity of the witnesses was suspect because the witnesses were not subjected to testifying in a public forum. The testimony was taken before a three-man Board with plaintiff and his attorney present. Each witness was subject to a lengthy cross-examination by plaintiff's attorney and a record was kept of the entire hearing.

Plaintiff cites *People ex rel. Difanis v. Barr* (1980), 83 Ill. 2d 191, 414 N.E.2d 731, as support for its proposition that the Board hearing should have been open to the public. In *Barr*, our supreme court held that an "informal" meeting of the city council should be open to the public. However, that meeting did not meet any section 42 exemption as does the meeting in this case.

Plaintiff also argues that reversal is required because the Board

failed to enforce its own subpoena. On February 27, 1987, the Board issued a subpoena *duces tecum* for records pertaining to several witnesses. The subpoena ordered the production of certain juvenile diversion records which are "in house" police department records on juvenile offenders who are not prosecuted in the courts. On March 18, 1987, the Board entered an order stating that it reserved ruling on plaintiff's motion to compel compliance with the subpoenas until resolution of whether the Board has authority to compel disclosure of juvenile law enforcement records by a subpoena. On May 13, 1987, the Board issued an order requiring the chief of police to comply with the subpoena *duces tecum*. Plaintiff then filed a motion to dismiss the complaint or in the alternative to bar the testimony of persons named in the subpoena *duces tecum* because the chief of police had not complied with the subpoena *duces tecum*. On May 29, 1987, a court held a hearing on plaintiff's motion.

Plaintiff sought juvenile diversion records of several witnesses. These records are "in house" police department records on juvenile offenders not prosecuted in the courts. The program is designed to give young offenders a chance to avoid prosecution. When the juvenile offender reaches the age of 18, his or her diversion record is destroyed. On or about the time the Board entered an order directing Police Chief Krueger to comply with its subpoena to produce the diversion records on the various witnesses listed, the records were shredded.

At the May 29, 1987, motion hearing, Mary Janic, dispatcher with the Salem police department since 1981, stated that she had shredded the documents on May 14, 1987. She had been involved with the juvenile diversion program from July 1985 until April 1987. On May 14, 1987, Police Chief Krueger requested the juvenile record of Kenya Smith. When she gave him the record, he asked her why it was marked "old file." She told him that once the juvenile turns 17, the file is put into the "old file." He then asked her if they were supposed to be destroyed. She replied "yes." He told her to shred the old files. In the old files, she stated, were records on Kenya Smith, possibly Marty Edwards, and possibly one other witness. A few days later, Chief Krueger called to ask her if any of the records on the witnesses in this case were shredded. This court finds that Janic's testimony does not reveal any wilful intent to destroy any or all juvenile diversion records of the witnesses.

Although plaintiff did not have the diversion records, he was permitted to inquire into any past juvenile offenses of each witness. Each witness testified to those past incidents. Thus, since the Board did

have each witness' juvenile history before it, it was able to fully judge credibility of the witnesses and plaintiff was not prejudiced.

■■ Plaintiff also argues that at the hearing the Board improperly considered the administrative interview discussed above in violation of section 3.10 of the Uniform Peace Officers' Disciplinary Act (Disciplinary Act) (Ill. Rev. Stat. 1987, ch. 85, par. 2563). He specifically argues that the admission of the interview into evidence over his objection "improperly undermined his credibility and caused the Board to find him guilty and terminate his employment."

Section 3.10 provides:

> "Admissions or confessions obtained during the course of any interrogation not conducted in accordance with this Act may not be utilized in any subsequent disciplinary proceeding against the officer." (Ill. Rev. Stat. 1987, ch. 85, par. 2563.)

In order to challenge the admission of the interview into evidence, plaintiff must allege specific violations of the Disciplinary Act. In his reply brief plaintiff cites a violation of section 3.2 of the Disciplinary Act, which provides:

> "No officer shall be subjected to interrogation without first being informed in writing of the nature of the investigation. If an administrative proceeding is instituted, the officer shall be informed beforehand of the names of all complainants. The information shall be sufficient as to reasonably apprise the officer of the nature of the investigation." Ill. Rev. Stat. 1987, ch. 85, par. 2555.

At the interview conducted by Chief Krueger, the chief read into the record the letter to plaintiff notifying him of the charges and time and place of the interview. The letter stated, in part:

> "You are hereby informed by this writing that allegations of misconduct have been lodged against you, and that an internal affairs investigation has been commenced to ascertain the facts surrounding the allegations. The allegations in this case include acts of moral turpitude, neglect of duty, conduct unbecoming a police officer, acts tending to discredit the police department, allowing unauthorized persons to ride in a squad car, acts of oppression and sexual harassment."

This court finds that plaintiff was sufficiently apprised of the charges. Thus, plaintiff's argument is without merit.

■■ Plaintiff also argues that the charges in the petition for termination were vague and indefinite. However, in light of the petition and the response to the motion for specificity, this court finds that plaintiff was effectively notified of the basis of the charges against

him. It is well established that all that is required is that the charges. be sufficiently clear and specific to enable the respondent to intelligently prepare a defense. *Altman v. Board of Fire & Police Commissioners* (1982), 110 Ill. App. 3d 282, 284, 442 N.E.2d 305, 306.

■■ Plaintiff's third issue on appeal is whether the Board properly found him guilty. Plaintiff specifically points out that the testimony of several witnesses was not credible, and argues in his reply brief that this court must review the record prior to making a decision. However, plaintiff fails to note that "[a] reviewing court may not judge the credibility of witnesses." (*Albert v. Board of Fire & Police Commissioners* (1981), 99 Ill. App. 3d 688, 691, 425 N.E.2d 1158, 1161.) These allegations are matters for the trier of fact. On review, the only question before this court is whether the findings of the administrative tribunal are against the manifest weight of the evidence. (99 Ill. App. 3d at 691, 425 N.E.2d at 1161.) After reviewing the record, this court finds that the Board's findings are not against the manifest weight of the evidence.

■■ Plaintiff's last issue is whether the termination of employment was proper. Plaintiff specifically argues that suspension was appropriate in this case because of his outstanding record as an officer. Since plaintiff's employment in 1980, he has been suspended only once, a period of two hours for failure to wear his hat. Plaintiff also points out that he is with his wife, from whom he was previously separated, and has two children.

In *Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n* (1981), 85 Ill. 2d 547, 426 N.E.2d 885, the supreme court established a two-step analysis for reviewing the findings of the administrative agency. The first step considers whether the findings were against the manifest weight of the evidence. In the second step, the court is to determine if the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge does exist.

It has been held that while an individual infraction "may not be sufficient to constitute a basis for discharge, viewed in totality they may have a substantial, detrimental impact on the discipline and efficiency of the police department." (*Albert v. Board of Fire & Police Commissioners* (1981), 99 Ill. App. 3d 688, 692, 425 N.E.2d 1158, 1162.) In this case, plaintiff's misconduct while on duty occurred repeatedly. Furthermore, in light of the fact that Salem is a small town with only 12 sworn officers, plaintiff's continued service could have a substantial, detrimental impact on the discipline and efficiency of the police department. Thus, this court finds that the termination of em-

ployment was proper, considering the findings of fact and permissible departmental concerns.

For the foregoing reasons, the judgment of the circuit court of Marion County is affirmed.

Affirmed.

LEWIS and HOWERTON, JJ., concur.